**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SCOTTY J. EDWARDS, #207067,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:  2:06-CV-214-MEF** |
| | ) | |
| **FLORALA, AL. POLICE DEPT., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW, Covington County Sheriff's Deputies Greg Jackson and Chris Inabinett,

Defendants in the above-entitled action, and submit their Special Report to the Court as follows:

### INTRODUCTION

The Plaintiff in this action filed his Complaint on March 6, 2006.  The Complaint alleges

that the Plaintiff was subjected to "harassment" by the Defendants based on "hearsay evidence"

that he was a drug dealer.  The Plaintiff amended his Complaint on March 30, 2006, pursuant to

the Court's March 8, 2006 Order.  On April 10, 2006, this Court ordered the Defendants to

submit a Special Report concerning the factual allegations made by the Plaintiff in his Amended

Complaint.

### PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges generally that he was "harassed" by a number of law enforcement

officers in Covington County, Alabama.  With respect to these Defendants, he appears to state

claims of unlawful search and seizure in violation of the Fourth Amendment to the United States

Constitution.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendants Covington County Sheriff's Deputies Greg Jackson and Chris Inabinett deny the allegations made against them by the Plaintiff as said allegations are untrue and completely without basis in law or fact.

**I.    FACTS**

In his Amended Complaint, the Plaintiff alleges that his car was searched once by Deputy Jackson at a drivers' license checkpoint and twice by Deputy Inabinett at traffic stops.  (Doc. 5 at pp. 5, 8-9.)   The Plaintiff alleges that these encounters occurred on March 13, 2004, April 8, 2004, and within a few days of April 12, 2004.  Id.   The Plaintiff also alleges that a search warrant was executed at his home.  Id. at pp 12-14.

The Plaintiff's allegations are incorrect in a number of important respects.   The checkpoint stop occurred in 2001 or 2002, not 2004 as alleged by the Plaintiff.  (Exhibit A, Affidavit of Greg Jackson, "Jackson aff." at ¶ 8.)  Deputy Inabinett was never on a traffic stop with the Plaintiff.  (Exhibit B, Affidavit of Chris Inabinett, "Inabinett aff." at ¶ 9.)   Finally, although he is not specifically mentioned in the Plaintiff's recitation of the facts, Deputy Inabinett participated in the execution of the search warrant at the Plaintiff's home.  Id.

For a number of years, the law enforcement agencies in Covington County have suspected that the Plaintiff was involved in the sale of narcotics.  (Jackson aff. at ¶ 5; Inabinett aff. at ¶ 7.)  Their suspicions were confirmed when the Plaintiff was arrested and subsequently pled guilty to Distribution of a Controlled Substance (cocaine) on September 28, 1999.  (Exhibit C, Order, Covington County Circuit Court Case No. CC-1999-56, "1999 Sentencing Order".)  The Plaintiff was sentenced to serve fifteen (15) years to run concurrently with the sentence imposed for his guilty plea to possession of a controlled substance, possession of marijuana, and giving a false name to a police officer in another case.  (1999 Sentencing Order at p. 1, Exhibit

D, SJIS Case Action Summary for Covington County Circuit Court Case No. CC-1998-167.)

The Plaintiff's sentence was split with one year of incarceration and the balance to be served on

probation.  (1999 Sentencing Order at p. 1.)

Once the Plaintiff was released from the Department of Corrections, these Defendants

had only one instance each in which they dealt with the Plaintiff.  Deputy Jackson met the

Plaintiff at a checkpoint prior to the time complained of by the Plaintiff.  Deputy Inabinett

participated in the execution of the search warrant referenced in the Plaintiff's Amended

Complaint.

Deputy Jackson encountered the Plaintiff at a drivers' license checkpoint in 2001 or

2002.  (Jackson aff. at ¶ 8.)  At the time, the Plaintiff had a passenger in his car who was a

known drug dealer.  Id.  Deputy Jackson obtained permission from the Plaintiff to search his car.

Id.  When he found nothing, the Plaintiff was released.  Id.  Deputy Jackson had no involvement

whatsoever with any of the incidents described by the Plaintiff in his Complaint.  Id. at ¶ 9.

The Plaintiff alleges that Deputy Inabinett stopped him for speeding on April 8, 2004.

(Doc. 5 at p. 8.)  However, the Covington County dispatch logs for that date show that Deputy

Inabinett did not stop the Plaintiff for speeding.  (Exhibit E, Covington County dispatch logs for

Deputy Inabinett dated 4/18/2004.)  Similarly, the Plaintiff alleges that Deputy Inabinett stopped

and searched his car on April 13, 2004, but again, the call logs demonstrate that Deputy Inabinett

was not involved in a traffic stop with the Plaintiff.  (Exhibit F, Covington County dispatch logs

for Deputy Inabinett dated April 12-19, 2004.)  Furthermore, Deputy Inabinett states that he did

not stop the Plaintiff at any time relevant to the Complaint.  (Inabinett aff. at ¶ 9).

In July 2004, Deputy Inabinett was a member of the Covington County Incident

Response Team (hereinafter "IRT").  (Inabinett aff. at ¶ 10.)  The team was charged with

executing search warrants throughout Covington County.  Id.  Deputy Inabinett was not in

3

charge of the IRT, but was merely a member of the entry team whose responsibility included entering homes that were the subjects of search warrants. Id. at ¶ 11. It was in this capacity that Deputy Inabinett had his one interaction with the Plaintiff during the time relevant to the Amended Complaint. Id. at ¶ 9.

On June 23, 2004, an agent of the 22nd Judicial Circuit Drug Task Force (hereinafter "DTF") applied for a warrant to search the Plaintiff's home. (Exhibit G, Application and Affidavit for Search Warrant, "Warrant aff.".) The affidavit was based upon information received from two citizen informants. Id. Both informants stated that the Plaintiff had crack cocaine, powder cocaine, marijuana, and drug paraphernalia at his home. Id.

The DTF agent received a search warrant from Judge Charles A. Short of the Covington County Circuit Court. (Exhibit H, Search Warrant.) Deputy Inabinett played no role whatsoever in the procurement of the warrant. (Inabinett aff. at ¶ 11.) The warrant was executed on June 23, 2004. (Exhibit I, 22nd Judicial Circuit Drug Task Force Warrant Form, "Warrant Form".)

Prior to taking part in the execution of the warrant, Deputy Inabinett attended a briefing. Deputy Inabinett was informed that a Confidential Informant (hereinafter "CI") had purchased drugs from the Plaintiff and the DTF had obtained a search warrant for the Plaintiff's home. (Inabinett aff. at ¶ 12.) He was briefed by others on the plan to execute the warrant. Id. Due to the fact that weapons are almost always present on premises where drugs are located, the team leader opted for a dynamic entry. Id. at ¶ 13.

Following the briefing, the IRT loaded into a van and approached the Plaintiff's home. (Inabinett aff. at ¶ 14.) When they arrived, a black male ran out of the Plaintiff's yard. Id. Members of the IRT attempted to apprehend the individual, but they were unsuccessful. Id.

The team continued to the Plaintiff's screened-in porch and opened the outer door. (Inabinett aff. at ¶ 15.) The lead officer knocked loudly and yelled "Police, search warrant!" Id.

After 10 to 15 seconds elapsed with no response, the door was breached and a team member threw a flash-bang grenade into the front room.  Id.

After the grenade went off, the entry team went into the home and found the Plaintiff standing in the front room.  (Inabinett aff. at ¶ 17.)  He was taken into custody without resistance.  Id.  No one else was present at the home.  Id.

Once the home was secure, the officers conducted their search.  The search resulted in the discovery of drugs and drug paraphernalia in the home and on the lawn outside.  (Inabinett aff. at ¶¶ 18, 19.)  Specifically, the officers found the following: (1) a black plastic bag containing marijuana in the yard outside the house; (2) a black canvas bag containing digital scales (with drug residue on them) and plastic bags in a bedroom; (3) a plastic straw with drug residue in the living room; and (4) a plastic bag with cocaine residue in the bathroom in front of the toilet.  (Exhibit J, Confiscated Item/Search Warrant Inventory; Inabinett aff. at ¶ 18; Warrant Form.)  The Plaintiff was arrested and charged with Possession of a Controlled Substance, Possession of Marijuana First Degree, and Possession of Drug Paraphernalia.  (Warrant Form.)  The Plaintiff was not charged with the marijuana found in the front yard because the unknown individual was seen running from that location.  (Inabinett aff. at ¶ 19.)  This was the only involvement Deputy Inabinett had with the Plaintiff during the period relevant to his Amended Complaint.  Id. at ¶¶ 9, 20.)

The charges resulting from the June 23, 2004 search warrant remain pending.  (Exhibit K, SJIS Case Action Summary for Covington County Circuit Court Case No. CC-2004-345.)  However, a probation revocation action was filed by the State.  (Exhibit L, SJIS Case Action Summary for Covington County Circuit Court Case No. CC-1999-56.70.).  As a result, the Plaintiff's probation was revoked.  Id. at p. 1.

II.    LAW

   A.    **All Claims by the Plaintiff Against Defendants in Their Official Capacities Must Fail Based on Eleventh Amendment Immunity and Because They are not "Persons" Under 42 U.S.C. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a *person*, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983.  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

   B.    **The Plaintiff's Claim Against Deputy Jackson is Barred by the Statute of Limitations.**

The Plaintiff's claim against Deputy Jackson is time barred.  As a matter of federal law, the statute of limitations for a § 1983 claim is governed by the state law for personal injury torts.

Wilson v. Garcia, 471 U.S. 261, 275-76 (1985).  Alabama Code § 6-2-38(l) sets a two-year

statute of limitations.  The Plaintiff initially filed suit on March 6, 2006.  Deputy Jackson's sole

encounter with the Plaintiff occurred in 2001 or 2002.  As a result, any claim the Plaintiff may

have against him is due to be dismissed. Garcia, 471 U.S. at 275-76; ALA. CODE § 6-2-38(l).  Id.

        **C.**        **The Plaintiff's Claims are Barred by the <u>Younger</u> Abstention Doctrine.**

The Court should abstain from taking jurisdiction over the Plaintiff's claims related to the

search of his home as the underlying incident is the subject of ongoing State judicial

proceedings.  Younger v. Harris, 401 U.S. 37 (1971).  Under Younger, federal courts should

abstain from taking jurisdiction where three elements are present: "(1) the proceedings constitute

an ongoing state judicial proceeding, (2) the proceedings implicate important state interests, and

(3) the plaintiff has an adequate opportunity to raise his constitutional challenges in the state-

court proceedings." Shuler v. Meredith, 144 Fed. Appx. 24, 26 (11th Cir. 2005) (unpublished)

citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

All three elements are present in this case.

First, the facts underlying the Plaintiff's claims are the subject of ongoing State court

proceedings. (Doc. 5 at p. 14; SJIS Case Action Summary for Covington County Circuit Court

Case No. CC-2004-345.)  Second, the prevention of drug trafficking is clearly an important state

interest.  Third, the Plaintiff will have an adequate opportunity to raise the constitutional issues

with respect to the validity of the search and the questions he raises in his Amended Complaint

regarding the discovery of the evidence.  As all three Middlesex elements are present, the Court

should abstain from hearing any claim related to the pending criminal charges against the

Plaintiff.

Furthermore, the interests of judicial economy dictate that the Court abstain.  In the event

that the Plaintiff is convicted in CC-2004-345, his claims will be barred by Heck v. Humphrey,

512 U.S. 477, 487 (1994). The rationale underlying <u>Heck</u> is that federal courts should not render decisions that cast doubt on the validity of the state court proceedings. In <u>Heck</u>, the Supreme Court held that where a § 1983 action for money damages is based upon the same operative facts underlying a state court criminal conviction, and a determination in the plaintiff's favor necessarily invalidates the underlying criminal convictions, the § 1983 claim is ***barred***. 512 U.S. at 487. The only way the plaintiff may overcome this bar is to show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id</u>.

The potential for conflicting rulings here is clear. Albeit unlikely, this Court could proceed and find that the search of the Plaintiff's home was invalid. Afterwards, the Plaintiff could challenge the constitutionality of the search of his home, lose, and be convicted of the pending charges. At that point, there would be two inconsistent verdicts and doubt would be cast on the validity of the state court proceedings. Consequently, in light of the basis underlying the holding in <u>Heck</u>, the Court should refrain from hearing any claims related to the search of the Plaintiff's home.

> **D.     Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

The Defendants were acting within their discretionary authority as deputies at all times relevant to the Plaintiff's Amended Complaint because all their actions were taken in the furtherance of their duties. <u>See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252</u> (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. <u>Saucier v. Katz,</u>

533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Furthermore, a plaintiff cannot merely rely on notice pleading in a § 1983 case involving qualified immunity. A plaintiff's pleading standard is "heightened" when § 1983 claims are made against government officials in their individual capacities. See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement"). It is the Plaintiff's burden to allege sufficient specific supporting facts or face

dismissal of his claims. Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc); South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996).

Deputies Jackson and Inabinett are entitled to qualified immunity for two reasons. First, the Plaintiff cannot establish a violation of his federally protected rights. Second, no clearly established law gave these Defendants the requisite "fair warning" that their conduct was unlawful.

### 1.    Neither Deputy Jackson no Deputy Inabinett violated the Plaintiff's federally protected rights.

It should be noted that in the Plaintiff's initial Complaint, he did not make any mention whatsoever of either of these Defendants in his statement of facts. (Doc. 1 at pp. 2-4.) It was not until the Court ordered him to amend his Complaint that he suddenly remembered which incidents were tied to these Defendants and the dates on which they occurred. Nonetheless, under the facts alleged, neither Deputy Jackson nor Deputy Inabinett violated the Plaintiff's rights.

With respect to Deputy Jackson, assuming, *arguendo*, that the checkpoint stop occurred within the statute of limitation, the stop was legal. The constitutionality of drivers' license checkpoints has not been in dispute for decades. Delaware v. Prouse, 440 U.S. 648, 663 (1979). Consequently, the underlying stop of the Plaintiff was clearly valid. The search was also valid because it was done with the Plaintiff's consent. (Jackson aff. at ¶ 8.) Accordingly, even if the Plaintiff's claim against Deputy Jackson was not barred by the statute of limitations, his inability to show that the stop violated his Fourth Amendment rights mandates judgment in Deputy Jackson's favor as a matter of law. Saucier v. Katz, 533 U.S. at 201.

The Plaintiff's claims against Deputy Inabinett likewise fail because the Plaintiff cannot show that Deputy Inabinett violated his federally protected rights. As noted in the Facts, the evidence in the record shows that Deputy Inabinett did not stop the Plaintiff as he alleges. The

only involvement Deputy Inabinett had with the Plaintiff was the search of his home pursuant to a warrant issued by Covington County Circuit Judge Charles A. Short.

Deputy Inabinett had no involvement in obtaining the warrant or completing the affidavit for the warrant. An officer conducting a search is entitled to qualified immunity if "a reasonable officer could have believed" that the search was lawful "in light of clearly established law and the information the searching officers possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Here, a detached and neutral judge had determined that probable cause existed and issued a search warrant. There is nothing on the face of the warrant from which a reasonable officer could have determined that it was invalid. Accordingly, Deputy Inabinett did not violate the Plaintiff's rights by participating in the execution of the warrant. Anderson, 483 U.S. at 641.

### 2. No clearly established law provided these Defendants with "fair warning that their conduct was illegal.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

11

The Plaintiff has not pointed to a case with materially similar facts that provided fair warning to Deputies Jackson and Inabinett. Moreover, this is not an obvious clarity case. In fact, the clearly established law relevant to the facts underlying the Plaintiff's claims in this case demonstrate that the actions of these Defendants was lawful. See, e.g., Anderson, 483 U.S. at 641; Prouse, 440 U.S. at 663. Accordingly, Deputies Jackson and Inabinett are entitled to qualified immunity and judgment in their favor as a matter of law on the Plaintiff's claims.

E.        **Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[1]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[1] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Scotty J. Edwards in the Amended Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted on this the 5th day of June, 2006.

> **s/Gary L. Willford, Jr.**
> GARY L. WILLFORD, JR. Bar Number:  WIL198
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Road
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to **James H. Pike, Esq.,** and served the following by U.S. Mail:

Scotty J. Edwards
AIS# 207067
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL 35749

> **s/Gary L. Willford, Jr.**
> OF COUNSEL