# EXHIBIT B

**Affidavit of Chris Inabinett**

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SCOTTY J. EDWARDS, #207067 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 2:06-cv-214-MEF |
| ) | |
| FLORALA, AL. POLICE DEPT., et al., ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT OF CHRIS INABINETT**

STATE OF ALABAMA              )
                              )
COUNTY OF COVINGTON    )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Chris Inabinett, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Chris Inabinett. The following statements are based upon my personal knowledge.

2. At all times relevant to the Plaintiff's Complaint, I was a Deputy for the Covington County Sheriff's Department. I served in that capacity from December 2003 to January 2006. My radio call sign at all times relevant to the Plaintiff's Complaint was "2316".

3. I left the Covington County Sheriff's Department when I accepted a posting as an Agent for the Alcoholic Beverage Control Board (hereinafter "ABC"). In that capacity, I am a sworn law enforcement officer for the State of Alabama.

4. I graduated from the Southwest Alabama Police Academy in 2000 and became certified as a peace officer by the Alabama Peace Officers Standards and Training Commission

1

(hereinafter "APOST"). I have been continuously certified as a peace officer in Alabama since. I am also a graduate of the ABC Training Academy.

5. I have reviewed the Plaintiff's Amended Complaint filed in this matter. I have personal knowledge of some of the facts stated in the Amended Complaint.

6. The radio logs attached to the Special Report are true and accurate copies of the logs kept in the regular course of business at the Covington County Sheriff's Department.

7. In 2004, the Plaintiff had the reputation in the Covington County law enforcement community of being involved in narcotics trafficking. This reputation stemmed from information received from various sources by several agencies including the Covington County Sheriff's Department, the 22nd Judicial Circuit Drug Task Force (hereinafter "DTF"), Opp Police Department, Florala Police Department and the Andalusia Police Department.

8. However, no one was able to get a confidential informant (hereinafter "CI") to make a buy off of the Plaintiff. The CIs were too afraid of the Plaintiff.

9. At no time did I ever search the Plaintiff's car or pull him over at a traffic stop. None of the traffic stops reflected in the logs attached to the Special Report were of the Plaintiff.

10. I participated in executing the warrant because I was a member of the Incident Response Team (hereinafter "IRT"). The IRT had the responsibility of serving search warrants throughout Covington County.

11. I was not in command of the team, but was a member of the entry team charged with making entry into the home. I had no responsibility for, or participation in, obtaining the search warrant for the Plaintiff's home or planning the execution of the warrant.

12. Prior to the operation, we received a briefing that informed us a CI had made a buy from the Plaintiff and that the DTF had obtained a narcotics search warrant. We were also briefed on the plan to execute the warrant.

13. Because weapons are nearly always present in drug houses, we made a dynamic entry into the house.

14. We arrived at the house on the evening of June 23, 2004 in a van used by the IRT. As we exited the van, a black male was standing in the Plaintiff's front yard. The individual ran as soon as he saw us. At least one member of the team yelled "Police, stop!" However, the subject ran off and we were unable to detain him.

15. The team went up to the screened-in porch of the Plaintiff's house and opened the outer door. The lead officer knocked loudly on the door and yelled "Police, search warrant!" After 10 to 15 seconds with no answer from inside, the door was breached, and a flash-bang grenade was thrown into the front room.

16. The flash-bang grenade made a loud noise and made a bright flash of light. The purpose of the grenade is to stun subjects inside the house and prevent them from resisting.

17. After the flash-bang grenade went off, the team entered. The Plaintiff was standing in the front room and appeared to be dazed by the effects of the grenade. The Plaintiff was immediately taken into custody without resistance and the team cleared the rest of the house. No one else was present.

18. The subsequent search resulted in the seizure of a clear plastic bag wrapped in black plastic containing what tests later confirmed to be marijuana, and a clear plastic bag containing a small amount of what tests later confirmed to be cocaine, a black bag with a small amount of what tests later confirmed to be marijuana, a straw with residue on it, and bag containing scales with residue on the scales.

19. The Plaintiff was not charged with the marijuana in the black plastic because it was found in the yard and the team did observe the unknown subject run from the front yard.

However, he was arrested and charged with possession of cocaine, possession of marijuana, and possession of drug paraphernalia.

20.    I had no further involvement with the Plaintiff after the execution of the search warrant.

21.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the 4TH day of May, 2006.

_____
CHRIS INABINETT

SWORN TO and SUBSCRIBED before me this 4 day of May, 2006.

_____
NOTARY PUBLIC

My Commission Expires: 1-29-09

4