IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SCOTTY J. EDWARDS, #207067, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:06-cv-214-WKW |
| | ) |
| FLORALA, ALABAMA, POLICE DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

**SPECIAL REPORT OF KEITH WISE AND JASON SUTHERLAND**

Defendants Keith Wise and Jason Sutherland submit this Special Report pursuant to the Court's order of April 10, 2006.

As more fully set out below, the traffic stop attributed to Keith Wise and Jason Sutherland occurred on December 17, 2002 – not April 6, 2004. (See infra § II(A)-(B).) The incident falls outside the statute of limitations period. (See infra § III.)

Further, Keith Wise was not involved in the stop. (See infra § II(B).) The Plaintiff has confused Keith with his brother Kevin. (See infra § II(B).)

Kevin Wise stopped the Plaintiff on December 17, 2002. (See infra § II(B).) Jason Sutherland was Kevin's back up officer. (See infra § II(B).)

Any claims arising from the stop are barred by the statute of limitations. (See infra § III(A).) In any event, Keith Wise was not present at all during the stop, and Jason Sutherland did not make the stop or search the Plaintiff. (See infra § II(B).)

1

## I. **PLAINTIFF'S ALLEGATION**

The Plaintiff makes one allegation against Keith Wise and Jason Sutherland:

On/or about April 5, Opp police made threat about me when they arrested my cousin, Tim Edwards, for possession of marijuana. The officers to[ld] my cousin they believed he was selling drugs for me and if I even come through Opp that night they was going to pull me over and search my car and take me to jail also for illegal drugs. So my cousin bonded out and call[ed] me and told me what was said. I called the probation officer in Elba and explained to her what was said. 12:30 a.m. I got up and went to Opp[.] I was pulled over and they tried to search my car but I said no they could bring their K-9 dog, but I wasn't letting them in my car without a search warrant. I'm knowing that they was going to try to plant some drugs in my car. So I wouldn't let them in my car. So then Officer Wise came with the excuse that the dog was sick and couldn't be used that night. He told me that they got a call that I was coming that way with drugs in my car. So why did I have a[n] attitude about them searching my car. I told them I was [tired] of getting harassed by the officers of Covington County. Because I took a 79 Monte Carlo and put a little money in it. Now I'm listed to be the biggest drug dealer in Covington County. The officers said we know you are selling drugs and that you got some in that car tonight. I told them to call for a K-9 dog and if he alert[ed] on my car they could search it or they could get a search warrant. So the police (Keith Wise and Jason Sutherland) went in the trunk of the police car. They came back to me in the front seat of the police car where they had me sitting and asked why I didn't want them searching my car and they got a call saying I was [carrying] illegal drugs. So I told them that I also had received a phone call tell[ing] me they said if I came through Opp that night they was going to pull me over and search my car and take me to jail for illegal drugs. An[d] that was the only reason I came to Opp to see if they was crazy enough to tell my cousin that then really try to do it. I unclipped my phone from my side and put it to my ear and asked the probation officer and Al Smith, a lawyer, did they hear the conversation and they said yes. So I told them I would talk to them later, then hung the phone up. The two officers was like who was that and I told them it was the lawyer I called before I left home

2

> and told him what my cousin had to[ld] me. Also the lawyer told me to call him back and let him hear the conversation if they pulled me over. But not to let them go into my car without a dog alerting on it first. So I told them they would be hearing from my lawyer about the harassment and tr[y]ing to set me up. So I left because they said they was finished with me.

(Doc. 5 at 7-8.)

## II. SUMMARY OF THE FACTS

The Plaintiff alleges that Opp police officers arrested his cousin Timothy Edwards for Possession of Marijuana on the evening of April 5, 2004, and that his own traffic stop occurred around 12:30 a.m. the following morning. (See Doc. 5 at 8.) In other words, the Plaintiff alleges his traffic stop occurred at 12:30 a.m. on April 6, 2004. (See Doc. 5 at 8.) That is not true.

The events described by the Plaintiff could only have occurred on December 16-17, 2002. The Plaintiff misrepresented the dates as April 5-6, 2004 in an effort to bring the events within the statute of limitations period. The Plaintiff had already been cautioned about the statute of limitations in the Court's order of March 8, 2006. (See Doc. 4 at 1.)

### A. APRIL 5-6, 2004: THE WRONG DATES

The incident did not occur in April 2004. Neither Keith Wise, nor his brother Kevin, worked for the Opp Police Department in April 2004. (See K. Wise aff. at 1, ¶5; G. Ezell aff. at 2, ¶ 15, and at 3, ¶ 20.)

Kevin Wise was hired on September 15, 2000. (See G. Ezell aff. at 3, ¶ 18.) He left the department on January 15, 2003. (See G. Ezell aff.

3

at 3, ¶ 18.) He later worked part-time from January 5 to 28, 2005. (See G. Ezell aff. at 3, ¶ 19.) However, he was not employed by the Opp Police Department in April 2004. (See G. Ezell aff. at 3, ¶ 20.)

Keith Wise also did not work for the Opp Police Department in April 2004. (See G. Ezell aff. at 2, ¶ 15; K. Wise aff. at 1, ¶ 5.) Keith was hired September 1, 2000, and resigned in November 2002. (See G. Ezell aff. at 2, ¶ 13; K. Wise aff. at 1, ¶ 3.) Keith was rehired on January 5, 2005, and is still employed today. (See G. Ezell aff. at 2, ¶ 14; K. Wise aff. at 1, ¶ 4.) However, Keith did not work for the Opp Police Department between November 2002 and January 2005. (See G. Ezell aff. at 2, ¶ 15; K. Wise aff. at 1, ¶ 5.) In particular, he did not work for the Opp Police Department on April 5 and 6, 2004. (See G. Ezell aff. at 2, ¶ 17; K. Wise aff. at 1, ¶ 7.)

Jason Sutherland was employed by the Opp Police Department in April 2004, but was off duty the night of April 5. (See G. Ezell aff. at 2, ¶¶ 8-9; J. Sutherland aff. at 2, ¶¶ 13-14.) Defendant's Exhibit 1 is Jason Sutherland's time card for the pay period including April 5 and 6, 2004. (See G. Ezell aff. at 2, ¶ 12.) He was off duty on Sunday, April 4, and Monday, April 5. (See Def.'s Ex. 1; G. Ezell aff. at 2, ¶ 8; J. Sutherland aff. at 2, ¶ 13.)

Jason returned to work on Tuesday, April 6, to work the afternoon shift from 1:30 p.m. to 9:30 p.m. (See Def.'s Ex. 1; G. Ezell aff. at 2, ¶ 9; J. Sutherland aff. at 2, ¶ 14.) Jason was not on duty during the early

4

morning hours of April 6, 2004.  (See G. Ezell aff. at 2, ¶ 11; J. Sutherland aff. at 2, ¶ 16.)  He did not participate in a traffic stop of Scotty Edwards on April 5 or 6, 2004.  (See J. Sutherland aff. at 2, ¶ 17.)

The Opp Police Department's Computer-Aided Dispatch ("CAD") activity log confirms the stop did not occur on April 5 or 6, 2004.  (See Def.'s Ex. 2; C. Kelley aff. at 2, ¶ 8.)  There is no record of Timothy Edwards or Scotty Edwards being stopped on those dates.  (See Def.'s Ex. 2.)

The log further confirms that Jason Sutherland did not return to work until the afternoon of April 6, 2004.  (See Def.'s Ex. 2.)  His first activity on the log appears at 2:10 p.m. (14:10 hrs) on April 6.  (See Def.'s Ex. 2 at 14.)  Again, Jason returned to work from his off days at 1:30 p.m. on April 6.  (See Def.'s Ex. 1; G. Ezell aff. at 2, ¶ 9; J. Sutherland aff. at 2, ¶ 14.)

**B.    DECEMBER 16-17, 2002: THE CORRECT DATES**

The Plaintiff claims his stop occurred during the early morning hours on the day following his cousin Timothy Bernard Edwards' arrest for Possession of Marijuana by Opp police officers: "On/or about April 5, Opp police made threat about me when they arrested my cousin, Tim Edwards, for possession of marijuana." (Doc. 5 at 7.)

The Opp Municipal Court's history log for the Plaintiff's cousin, Timothy Bernard Edwards, indicates that Opp police officers have only arrested him once for Possession of Marijuna – on December 16, 2002.

5

(See Def.'s Ex. 8; D. Danford aff. at 1, ¶¶ 5-6.)  Timothy Edwards was not arrested for Possession of Marijuana by an Opp police officer on April 5, 2004.  (See Def.'s Ex. 8; D. Danford aff. at 2, ¶ 7.)

The correct incident dates are December 16 and 17, 2002.  (See Def.'s Exs. 2, 3, 4, 6, 7, and 8; C. Kelly aff. at 1-2, ¶¶ 5, 6, 7, 9, and 10; D. Danford aff. at 1, ¶¶ 5-6.)  The actual officers involved were Kevin Wise and Jason Sutherland.  (See J. Sutherland aff. at 1-2, ¶¶ 5-10.)  Kevin is Keith Wise's brother.  (See K. Wise aff. at 1, ¶ 9.)  Kevin has not been named in this lawsuit, and the statute of limitations has expired.

### 1.  *Timothy Edwards' Arrest*

The date was determined by checking Timothy Edwards' Opp Municipal Court history.  (See Def.'s Ex. 8; D. Danford aff. at 1, ¶¶ 5-6.)  Timothy Edwards has only been arrested once for Possession of Marijuana by Opp police officers.  (See Def.'s Ex. 8 at 1; D. Danford aff. at 1, ¶ 6.)  The arrest occurred on Monday, December 16, 2002.  (See Def.'s Ex. 8 at 1; D. Danford aff. at 1, ¶ 6.)

According to the arrest report, Kevin Wise and Jason Sutherland made the arrest.  (See Def.'s Ex. 3 at 1; C. Kelley aff. at 2, ¶ 6.)  Keith Wise was not present.  (See J. Sutherland aff. at 2, ¶ 10.)

The CAD activity log reflects that Kevin Wise (Unit 320) stopped Timothy Edwards at 10:04 p.m. (22:04 hrs.) on December 16, 2002.  (See Def.'s Ex. 4 at 6; C. Kelley aff. at 2, ¶ 7.)  Kevin placed Timothy Edwards under arrest at 10:05 p.m.  (See Def.'s Ex. 4 at 6.)

6

At 10:08 p.m., Kevin notified the dispatcher that drugs were found in a tool box.  (See Def.'s Ex. 4 at 6.)  Also at 10:08 p.m., Jason Sutherland (Unit 325) arrived on scene as backup.  (See Def.'s Ex. 4 at 6.)

The arrest report on Timothy Bernard Edwards confirms the incident date and time and identifies the arresting officers.  (See Def.'s Ex. 3 at 1; C. Kelley aff. at 2, ¶ 6.)

Kevin Wise's in-car video camera recorded the arrest.  (See Def.'s Ex. 6; C. Kelley aff. at 2, ¶ 9; J. Sutherland aff. at 2, ¶ 8.)

### 2. *Scotty Edwards' Stop*

The CAD activity log reflects that Kevin Wise made another traffic stop at 1:34 a.m. during that same shift.  (See Def.'s Ex. 4 at 7.)  Because the stop occurred after midnight, the date was Tuesday, December 17, 2002.  (See Def.'s Ex. 4 at 7.)

Dispatcher Mary Brundidge's handwritten notes indicate that at 1:28 a.m. (six minutes before the stop), she relayed information (10-18) to Kevin Wise that she received from a Florala police officer (Florala 108).  (See Def.'s Ex. 7; C. Kelley aff. at 2, ¶ 10.)  Her notes state, "Florala 108 advise[s] a purple & white Monte Carlo coming into Opp w/ Scotty Edwards driver.  Poss. (possible) 10-77 (drugs), if can make p.c. (probable cause)."  (See Def.'s Ex. 7.)

The notes reflect that Mary Brundidge relayed that information to Kevin Wise at 1:28 a.m.  (See Def.'s Ex. 7.)  Kevin stopped the Plaintiff in

7

his purple and white Monte Carlo at 1:34 a.m.  (See Def.'s Ex. 4 at 7; Def.'s Ex. 6.)

Jason Sutherland arrived on scene at 1:36 a.m.  (See Def.'s Ex. 4 at 7; Def.'s Ex. 6.)  Both officers cleared the stop at 1:49 p.m.  (See Def.'s Ex. 4 at 7.)

Kevin Wise's car camera video shows the stop.[1]  (See Def.'s Ex. 6; C. Kelley aff. at 2, ¶ 9; J. Sutherland aff. at 2, ¶ 8.)  The Plaintiff and his car are visible in the footage.  (See Def.'s Ex. 6.)

Additionally, Kevin Wise's hand-written video tape log reflects that he stopped Timothy Edwards at 10:10 p.m. on December 16, 2002, and Scotty Edwards at 1:34 a.m. on December 17, 2002.  (See Def.'s Ex. 2; C. Kelley aff. at 1, ¶ 5.)

Jason Sutherland arrived after the Plaintiff's stop began and served as backup officer only.  (See J. Sutherland aff. at 1, ¶ 6.)  Jason did not stop the Plaintiff or search his car.  (See J. Sutherland aff. at 1-2, ¶ 7.)  In fact, neither officer searched the Plaintiff's car.  (See Def.'s Ex. 6.)

Keith Wise was not present at all.  (See J. Sutherland aff. at 2, ¶ 10.)  He did not even work for the Opp Police Department at the time. (See J. Sutherland aff. at 2, ¶ 10; K. Wise aff. at 1, ¶ 6; G. Ezell aff. at 2, ¶ 16.)

---

[1]  The time setting on Kevin Wise's car camera was twelve hours and eleven minutes slow.  (See J. Sutherland aff. at 2, ¶ 9.)

8

### III. LEGAL ANALYSIS

The Plaintiff's claims are barred by the statute of limitations and the doctrine of qualified immunity.

### A. THE STATUTE OF LIMITATIONS

Any claims related to the December 17, 2002, traffic stop are barred by the two-year statute of limitations. See Owens v. Okure, 488 U.S. 235, 249-50 (1989); Lufkin v. McCallum, 956 F.2d 1104, 1105 (11th Cir. 1992); Ala. Code § 6-2-38(*l*) (1975).

In addition to the statute of limitations, the Plaintiff's claims are barred by the doctrine of qualified immunity.

### B. QUALIFIED IMMUNITY

"Government officials sued for acts committed in the course of their official duties may invoke the defense of qualified immunity." O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

"Qualified immunity is a sharply focused, situation bound analysis." Crosby v. Paulk, 187 F.3d 1339, 1345 (11th Cir. 1999). "Under current Eleventh Circuit law, the plaintiff pursuing a § 1983 claim must come forward with specific facts, concerning each defendant, indicating that each defendant has not only violated a constitutional

right, but a clearly established one." Edwards v. Alabama Dep't of Corr., 81 F. Supp.2d 1242, 1253 (M.D. Ala. 2000) (Thompson, J.).

"The qualified immunity inquiry involves three steps: (1) the alleged conduct must fall within the scope of the discretionary authority of the actor; (2) if it does, we must then determine whether that conduct violates a constitutional right; (3) if so, we must inquire whether the asserted right was clearly established at the time of the alleged violation." Tinker v. Beasley, 429 F.3d 1324, 1326 (11th Cir. 2005).

### 1. *Discretionary Function*

"To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)).

In this case, the Plaintiff complains about a traffic stop. "In assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures is a part of his job-related powers and responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Because making traffic stops is part of the job-related powers and responsibilities of a police officer, the discretionary function requirement is satisfied.

### 2.   *Violation of a Constitutional Right*

"Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity."  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

"The first inquiry must be whether a constitutional right would have been violated on the facts alleged."  Saucier v. Katz, 533 U.S. 194, 200 (2001).

The Plaintiff has the burden to demonstrate that Keith Wise and Jason Sutherland violated a constitutional right.  "If the conduct did not violate a constitutional right, the inquiry ends there."  Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir. 2005).

There are no facts that could give rise to a constitutional violation by Jason Sutherland.  Kevin Wise, who is not a defendant, stopped the Plaintiff before Jason arrived.  (See Def.'s Ex. 6.)  Jason was only the backup officer.

As the video shows, Jason did not stop the Plaintiff or search his car.  (See Def.'s Ex. 6; J. Sutherland aff. at 1-2, ¶ 7.)  The Plaintiff's car was not searched by either officer.  (See Def.'s Ex. 6.)

Keith Wise was not present during the stop and did not work for the Opp Police Department at the time. (See J. Sutherland aff. at 2, ¶ 10.)

The Plaintiff's own statement of the events does not describe a constitutional violation. (See Doc. 5 at 7-8.) The Plaintiff recites an alleged hearsay statement from his cousin in which Opp police officers allegedly threatened to stop the Plaintiff, search his car, and arrest him, if he drove through Opp that night. (See Doc. 5 at 7.) As a threshold issue, the Defendants object to the hearsay statement of the Plaintiff's cousin and move to strike it. (See Fed. R. Evid. 802.)

In any event, the Plaintiff's own statement and the car camera video tape prove the alleged threat was unfounded. (See Doc. 5 at 7-8; Def.'s Ex. 6.) Although Kevin Wise stopped the Plaintiff, he never searched the Plaintiff's car or arrested him. (See Def.'s Ex. 6.)

The Plaintiff claims that he refused consent for the officers to search his car. (See Doc. 5 at 7.) The video tape shows that the officers honored the refusal. (See Def.'s Ex. 6.) They did not search the car. (See Def.'s Ex. 6.)

The Plaintiff alleges that he knew the officers were going to plant drugs in his car. (See Doc. 5 at 7.) However, the video recorded the entire stop. (See Def.'s Ex. 6.) The officers did not plant drugs. (See Def.'s Ex. 6.) They did not even enter the Plaintiff's car. (See Def.'s Ex. 6.)

The Plaintiff alleges one of the officers told him they got a call that he was coming to Opp with drugs in his car. (See Doc. 5 at 7.) The truthfulness of the officer's statement is corroborated by Dispatcher Mary Brundidge's handwritten notes. (See Def.'s Ex. 7.)

The undisputed facts show that a dispatcher relayed a tip to Kevin Wise from a Florala officer. (See Def.'s Ex. 7.) The tip indicated that the Plaintiff was approaching Opp and possibly in possession of drugs. (See Def.'s Ex. 7.) Kevin knew he had just seized a large quantity of marijuana from the Plaintiff's cousin. (See Def.'s Exs. 3 and 6.)

A police officer is justified to act on a tip received from another law enforcement officer. See United States v. Hensley, 469 U.S. 221, 232 (1985). In this case, the tip was corroborated by Kevin Wise's personal knowledge. (See Def.'s Exs. 3 and 6.)

Kevin stopped the Plaintiff, but apparently could not develop probable cause to justify a search. (See Def.'s Ex. 6.) Kevin did not have a drug dog available. (See Doc. 5 at 8.) Rather than risk an unlawful search, Kevin released the Plaintiff. (See Def.'s Ex. 6.)

Jason Sutherland only served as backup officer. (See J. Sutherland aff. at 1-2, ¶ 7.) Jason neither stopped the Plaintiff, nor searched his car. (See J. Sutherland aff. at 1-2, ¶ 7.)

Keith Wise did not work for the Opp Police Department at the time and was not present during the stop. (See K. Wise at 1, ¶¶ 6, 8; J. Sutherland aff. at 1-2, ¶ 10.)

Because the Defendants did not violate any of the Plaintiff's constitutional rights, they are entitled to qualified immunity.

### 3. *Violation of Clearly Established Law*

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

The Defendants cannot imagine how the facts could state a claim for a constitutional violation. For the sake of completeness, however, the Defendants address the requirement of "clearly established law".

"For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

"In determining whether the contours of a constitutional right are clearly established, we examine cases that announce general constitutional rules and cases that apply those rules to factual circumstances to determine if a reasonable public official, who is charged with knowledge of such decisions, would have understood the

constitutional implications of his conduct." Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003).

The salient question is whether the state of the law gave the officers fair warning that their alleged conduct was unconstitutional. Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

The Plaintiff has the burden to identify clearly established law that would deprive the officers of qualified immunity. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). In this case, that burden is insurmountable.

## IV. DEFENSES

Keith Wise and Jason Sutherland plead the defenses of (1) qualified immunity; (2) State-agent immunity; and (3) the statute of limitations.

## V. MOTION FOR SUMMARY JUDGMENT

Keith Wise and Jason Sutherland move the Court to treat this Special Report as a motion for summary judgment.

## VI. CONCLUSION

The claims against Keith Wise and Jason Sutherland should be dismissed because (1) the statute of limitations has expired; (2) Keith Wise was not involved in the stop at all and is entitled to qualified immunity; and (3) Jason Sutherland did not stop the Plaintiff, or search his car, and is entitled to qualified immunity.

15

          **/s/ James H. Pike**
          James H. Pike  (PIK003)
          Attorney for Defendants Keith Wise
          and Jason Sutherland

OF COUNSEL:

COBB, SHEALY, CRUM & DERRICK, P.A.
P.O. Box 6346
Dothan, Alabama 36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail: jpike@cobb-shealy.com

## CERTIFICATE OF SERVICE

I, James H. Pike, certify that on July 10, 2006, I electronically served a copy of this document upon:

    Gary L. Willford, Jr.
    WEBB & ELEY
    P.O. Box 238
    Montgomery, Alabama 36101-0238

I, James H. Pike, further certify that on July 10, 2006, I mailed a copy of this document, postage prepaid and properly addressed, to:

    Scotty J. Edwards
    AIS #207067
    Limestone Correctional Facility
    28779 Nick Davis Road
    Harvest, Alabama  35749

          **/s/ James H. Pike**
          James H. Pike