IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SCOTTY J. EDWARDS, #207067, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 2:06-CV-214-WKW |
| FLORALA, AL. POLICE DEPT., et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to the findings and conclusions which follow, the Magistrate Judge recommends the entry of summary judgment in favor of all defendants and the dismissal of this action with prejudice.

**I.    PROCEDURAL HISTORY**

**Deficiencies** in the original complaint filed pursuant to 42 U.S.C. §1983 on March 6, 2006, required the court to order the *pro se* plaintiff, Scotty J. Edwards, an Alabama prisoner ("Edwards"), to file the Amended Complaint submitted on March 30, 2006.[1] Edwards alleges that prior to his confinement the defendants harassed him unconstitutionally through traffic stops and searches because of his reputation as a drug dealer.

For good cause, the court dismissed with prejudice, and prior to service of process,

---

[1] Edwards sought to challenge actions barred by the applicable statute of limitations, did not identify adequately the individuals purportedly culpable for violations of his constitutional rights, and did not clarify sufficiently either his factual allegations or requested relief.

1

the five governmental entities designated as defendants: the Florala, Alabama Police Department; the Opp, Alabama Police Department; the Covington County Sheriff Department; the Walton County, Florida Sheriff Department; and the Covington County Drug Task Force.[2] Notwithstanding notice and reasonable extensions of time, Edwards failed to perfect service on five of the nine remaining defendants: Perry William, Tim Snow, Paul Dean, James Perry, and Derrick Walters.[3]

The *sole defendants* now *are Jason Sutherland[4] and Keith Wise, officers with the Opp Police Department*, along with *Greg Jackson and Chris Inabinett, deputies with the Covington County Sheriff's Department.* The procedural order entered in response to the complaint instructed defendants to file "a written report ...containing the sworn statements

---

[2] *See* Recommendation of the Magistrate Judge (Doc.6, April 10, 2006) and ORDER overruling objection and Adopting Recommendation (Doc. 19, May 25, 2006).

[3] *See* Order filed June 8, 2006 (Doc. 22) and July 13, 2006 Order (Doc. 27), wherein the court chronicled the failed service attempts on these defendants as follows:

> No service has been perfected on five individuals: Paul Dean, James Perry, Perry William, Tim Snow, Derrick Walters, and James Perry. In the initial scheduling order filed April 10, 2006 (Doc.7) and again in the Order entered June 8 (Doc. 22) the court specifically advised Plaintiff concerning his responsibilities to perfect service, available options for perfecting service, time limits for perfecting service, and the consequences of not perfecting service on these individuals. The docket reflects (a) another failed attempt to serve Walters and Perry at the address provided by Plaintiff; (b) no address supplied for Paul Dean by the June 26 deadline set; and ( c ) no effort by Plaintiff to use another method for service on William and Snow. Consequently, this action will proceed against only the persons who have been duly served, and absent any timely service on these five individuals, they will not be party-defendants in this lawsuit.

Doc. 27, n.1 at 1.

[4] The complaint incorrectly identified Defendant Sutherland as "Southerland", and the **Clerk is instructed to correct the spelling of this defendant's last name on the official record.**

2

of all persons having knowledge of the subject matter of the complaint", and to include any immunity defenses as well as any relevant documents, records, and regulations. (Doc. 7). Defendants Jackson and Inabinett duly filed their Answer and Special Report on June 5, 2006 (Docs. 20, 21), and Defendants Wise and Sutherland responded similarly on July 10, 2006 (Doc. 26). On July 13, 2006, the court set an August 7, 2006 deadline for Edwards to respond to Defendants' special reports and further advised:

> **If the plaintiff fails to file a response as required by this order, the court will treat the plaintiff's failure to respond as an abandonment of the claims set forth in the complaint and as a failure to prosecute this action. Moreover, the plaintiff is specifically cautioned that if he fails to file a response in compliance with the directives of this order the undersigned will recommend that this case be dismissed for such failure. In addition, if the plaintiff fails to respond to the written reports with respect to each of the claims raised in his complaint, the court will treat this failure as an abandonment of these claims and shall proceed as justice requires.**
>
> As indicated herein, **at some time in the future the court may treat the defendants' reports and the plaintiff's response as a dispositive motion and response.**[5] Thus, in filing a response to the defendants' reports the plaintiff should not rely only on his or her unsworn pleadings but should respond by filing sworn affidavits,[6] or other evidentiary materials developed through discovery or other appropriate means and which set forth specific facts demonstrating there is a genuine issue of material fact for trial in this case. Failure to file sworn affidavits or other evidentiary materials may result in this

---

[5] Thus, in preparing a response to the special reports filed by the defendants the plaintiff should refer to the requirements of Rule 56, *Federal Rules of Civil Procedure*.

[6] An affidavit is a sworn statement in writing made under oath or on affirmation before a notary public or other authorized officer. The affidavit must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

court accepting the defendants' evidence as the truth.[7] If documents are referred to in the opposing affidavits and have not been previously filed with the court, sworn or certified copies of those papers must be attached to the affidavits or served with them.

The parties are hereby notified that, **unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken**, upon the expiration of the time for the plaintiff to file a response as allowed by this order, the court may at any time thereafter and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law.

(Doc. 27).

In response to Edwards' motions, albeit untimely, the court has twice extended his August 7 deadline to file responses to Defendants' submissions: to September 12 (Doc. 31) and to November 22 (Doc. 34). In granting the last extension, the court pointedly questioned Edwards' diligence and underscored, as follows, its unwillingness to continue extending his deadline in the absence of compelling cause:

> The court is bound to consider "prejudice" not just to the parties but also to the court in connection with its duty to make orderly and timely dispositions of actions. The law enforcement officers designated as defendants have an independent and valid interest in securing as readily as possible final adjudication of claims asserted against them individually arising from the performance of their official duties. The responsive pleadings by these officers include the assertion of immunity defenses which warrant evaluation prior to discovery along with other affirmative defenses which, if established, would bar this action altogether.

---

[7] If the plaintiff is unable to present, by affidavit, facts essential to justify his opposition to the defendants' reports, then plaintiff must file a sworn statement as to why he or she is unable to do so.

Aside from the question of prejudice to the court and parties by granting continuances which unduly protract resolution of the litigation, the court is bound to consider, in the first instance, the *merits* of a motion for relief from any reasonable deadline. The first deadline, August 7, gave Edwards almost 60 days to digest and respond to the submissions filed June 5 by Defendants Jackson and Inabinett, and almost 30 days to respond to submissions not filed until July 10; the submissions rest on substantially similar facts and legal arguments. Delays in receiving and docketing Edwards' first motion for continuance allowed him additional time – between the missed August 7 deadline and the court's August 18 order, while the new deadline ordered – September 12, extended about three more weeks. When this *Order* is docketed, Edwards will have had the benefit of another 30 days to prepare any Response.

While incarcerated citizens have a right of access to federal courts, they do not enjoy – any more so than "free-world" citizens – any privilege to prosecute claims they choose to file at their leisure or convenience. The claims asserted by Edwards do not relate to his conviction or the conditions of his confinement in state prison; instead, they relate to generalized claims of police/sheriff harassment by traffic stops occurring between 2003 and 2004, for which Edwards seeks millions of dollars in damages. His stated difficulties in meeting the court's deadlines arise wholly from the *fact* of his incarceration, and he alone must assume responsibility for the underlying convictions. As long as he remains incarcerated, it is reasonable to project the continuation of the limitations about which he complains: restrictions on use of the law library, dependence on inmates more learned in the law; transfers from facilities or job assignments which further restrict use of law libraries; and limited supplies.

Edwards also faces formidable difficulties in prosecuting a federal civil action fraught with nuances and legal complexities which deter even some seasoned lawyers, and his pending motion acknowledges his need, and stated search, for a lawyer to advance this claim. He is advised that the court cannot provide counsel to him. He is further advised that if he chooses to pursue this action without counsel, the court will not be obliged to, and will not, act as his counsel, or grant automatically motions to continue other deadlines which may govern this lawsuit. The court also deems it necessary to repeat this cautionary note included in its *Order* filed July 13, 2006:

> "If the plaintiff fails to file a response as required by this order, the court will treat the plaintiff's failure to respond as an abandonment of the claims set forth in the complaint and as a failure to prosecute this action. Moreover, the plaintiff is specifically cautioned that if he fails to file a response in compliance with the directives of this order the undersigned will recommend that this case be dismissed for such failure. In addition, if the plaintiff fails to respond to the written reports with respect to each of the claims raised in his complaint, the court will treat this failure as an abandonment of these claims and shall proceed as justice requires."
>
> In the same *Order* the court advised that "**at some time in the future the court may treat the defendants' reports and the plaintiff's response as a dispositive motion and response.**" **The parties are NOW ADVISED THAT THE DEFENDANTS' reports will be treated as motions for summary judgment.**

(Doc. 34).

Edwards has not filed any response at all to the defendants' summary judgment submissions.

## II.  SUMMARY JUDGMENT STANDARD

In order to survive Defendants' properly supported motion for summary judgment, Edwards is required to produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will

bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III. DISCUSSION

To the extent that Edwards intended to assert claims against these officers in their official capacities, such claims are barred by the Eleventh Amendment to the United States Constitution and thus fail to invoke this court's subject matter jurisdiction. *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir. 1989); *Carr v. City of Florence*, 918 F.2d 1521, 1525 (11th Cir. 1990). Nor are these deputies considered "persons" for the purpose of Section 1983 liability. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). As now discussed, Edwards fails to state any constitutional violation by these officers in their individual capacities, and that failure makes unnecessary any discussion of other defenses asserted.

### A.   Plaintiff's factual allegations

Edwards' amended complaint pinpoints "March 5, 2004 until June 23, 2004" as the date for Defendants' alleged violation of his constitutional rights, described generally on the form complaint as follows:

> GROUND ONE:  (Cov. County officers) harassment by all of them because of hearsay evidence that I was selling and trafficing [sic] drugs.
> I would get pulled over everytime I turned around in Cov. County. Sometime for speeding and most times for nothing. But everytime my car would be search [sic] and/or the dog would be brung [sic] out so they could trap me with the so call drugs I was suppose to be caring [sic]. But I never was caring any.
> GROUND TWO: The threat Opp, Al. Police said when they arrested my cousin, Tim Edwards, when they arrested him for possession of marijuana. The officers told my cousin they believed he was selling drugs for me and if I ever came through Opp that night they was going to pull me over and search my car and take me to jail also for illegal drugs.

### B.   Defendants Wise and Sutherland

Edwards' hand-written attachment to his complaint, at pages 5-15, is a rambling, single-spaced narrative account of his interactions with law enforcement officers commencing in March 2004; he relates a single interaction with Defendants Wise and Sutherland, purportedly during a "traffic stop" at 12:30 a.m. on April 6, 2004. He refused a requested consent of his car, and described as follows the defendants' alleged violation of his rights:

> The officers said we know you are selling drugs and that you got some in that car tonight. I told them to call for a K-9 dog and if he alert[ed] on my car they could search it or they could get a search warrant. So the police went in the truck of the police car. They came back to me in the front seat of the police car where they had me sitting and asked why I didn't want them searching my car and they got a call saying I was [carrying] illegal drugs. So I told them that I also had received a phone all tell[ing] me they said if I came through Opp that night they was going to pull me over and search my car and take me to jail

for illegal drugs. An[d] that was the only reason I came to Opp to see if they was crazy enough to tell my cousin that then really try to do it. I unclipped my phone from my side and put it to my ear and asked the probation officer and Al Smith, a lawyer, did they hear the conversation and they said yes. So I told them I would talk to them later, then hung the phone up. The two officers was like who was that and I told them it was the lawyer I called before I left home and told him what my cousin had to[ld] me. Also the lawyer told me to call him back and let him hear the conversation if they pulled me over. But not to let them go into my car without a dog alerting on it first. So I told them they would be hearing from my lawyer about the harassment and tr[y]ing to set me up. So I left because they said they was finished with me.

(Doc. 5 at 7-8).

These allegations patently fail to state any violation of constitutional rights by Defendants Wise and Sutherland. Even if they could be construed otherwise, these defendants' sworn and undisputed submissions establish their entitlement to judgment as a matter of law. Whether the events described occurred on the April 2004 date alleged, or on December 16-17, 2002, a period outside the applicable statute of limitations, the record is undisputed that Defendant Wise was not involved at all as he did not work for the Opp Police Department on either date and was not present at all. The City of Opp hired him as a police officer on September 1, 2000, he resigned on November 2002, was rehired on January 5, 2005, and remains employed.[8]

With respect to Defendant Sutherland, certified time records establish his off-duty status on April 4 and 5, 2004. (*See* Def.'s Ex. 1; G. Ezell Aff. at 2, ¶8; J. Sutherland Aff. at 2,

---

[8] *See* K. Wise Aff. at 1, ¶5; G. Ezell Aff. at 1,¶ 15, and at 3, ¶20. Edwards may have intended to sue Defendant Wise's brother, Kevin, but he did not work for the department on the date alleged, having been hired on September 15, 2000 and left on January 15, 2003, returning for part-time work from January 5 to 28, 2005. (*See* G.Ezell Aff. at 3, ¶ ¶18-19).

¶13). Moreover, the Opp Police Department records do not show any traffic stop of Edwards, or of his named cousin, occurring on the dates alleged. (*See* Def's Ex. 2; C. Kelley Aff. at 2, ¶8). Instead, those records establish (a) December 16, 2002, as the date for the cousin's arrest by Opp police officers Kevin Wise (not a defendant in this action) and Defendant Sutherland, and (b) December 17, 2002, as the date for the traffic stop about which Edwards complains, and officer Kevin Wise as the officer making the stop, with Defendant Sutherland arriving within minutes.[9]

To the extent that Edwards' conclusory allegations could be interpreted as stating sufficiently any wrongful act implicating a constitutional right, his claims are barred by the statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992); Ala. Code §6-2-38 (1975). Edwards' failure to allege anything remotely akin to specific facts demonstrating Defendant Sutherland's violation of clearly established rights makes unnecessary any further analysis of his qualified immunity defense. Defendants Wise and Sutherland are entitled to summary judgment.

### C.   Defendants Jackson and Inabinett

Edwards' handwritten attachment to his complaint pinpoints 3 dates in 2004 for allegedly unconstitutional infringements by Defendants Jackson and Inabinett during the course of their activities as Covington County sheriff's deputies: March 13, April 8, and around April 12. The March 13 incident involved Defendant Jackson at a "license

---

[9] *See* Defs.' Exs.2,3,4,6,7,8; Sutherland Aff.; K. Wise Aff; C. Kelley Aff.; G. Ezell Aff.. Ex. 6 is a DVD of the traffic encounter, recorded from Officer Kevin Wise's car camera video.

checkpoint" as Edwards "was coming into Florala" and the only conduct particularized to Jackson are statements, highlighted as follows from the complaint:

> I was coming into Florala and Florala Police and the Sheriff deputy's [sic] had a road block checking license but as I made it to them and gave them my license. They told me to pull over so I did. They all approached my car and stopped checking license. Told me to exit my car as I did they placed me against my car and searched me down. *The deputy (Greg Jackson) said yeah I believe we got him today.* I asked what was going on and *he said they was told I had went to make a big drug pick up.* I told them it was a lie because I didn't sell drugs. They went all through my car, in the trunk, and under the hood. But I wasn't car[rying] anything again.

(Doc. 5 at 5).

Edwards makes the following allegations against Defendant Inabinett after he stopped him for speeding on April 8 "as [he] was leaving out of Florala":

> But I was pulled out and handcuffed and my car was searched for drugs. They [Defendants Inabinett and Florala Policeman Perry Williams] looked in my trunk, pull out my pool stick case and saying yeah we got you now. Even before they looked in the case to only find my pool stick and check for my stick. That they seen me put into the bag from somewhere they was sitting at tr[y]ing to watch my house. So they said I was free to go.

(Doc. 5 at 8-9). Edwards' second encounter with Defendant Inabinett occurred a few days after an April 12 traffic stop by Florala policeman P. Williams as Edwards headed to the Florida state line; he describes the encounter, in relevant part, as follows:

> I was pulled over by the Florala Police and Deputy Chris Inabinett and my car was searched for drugs again. I asked them why won't they leave me alone and stop harassing me with that hearsay, and just because of the way I had my car fixed up. They said because we believe you is selling and transporting drugs.

(Doc. 5 at 10).

The court has carefully scrutinized all of Edwards' narrative and finds no other factual allegations which attribute to Defendants Jackson and Inabinett any other specific acts or statements. Construed liberally in deference to Edwards' status as a non-lawyer prisoner representing himself, the allegations made fall woefully short of any Section 1983 claim for which relief can be given. Because Edwards has not responded at all to these defendants' evidentiary submission for summary judgment, the court accepts the officers' sworn testimony as true. While both defendants admit knowledge of Edwards' reputation as a drug dealer, they deny that they harassed him through traffic stops and searches on account of that reputation and in an effort to find controlled substances.[10]

Defendant Jackson denies altogether the encounter attributed to him, testifying in pertinent part:

> In my capacity as a law enforcement officer, I have had no involvement whatsoever with the Plaintiff since March 5, 2004. In fact, the only interaction I ever had with the Plaintiff occurred in 2001 or 2002 when the Plaintiff was stopped at a drivers' license checkpoint. The Plaintiff had a passenger in his car who was a known drug dealer. I obtained consent to search the Plaintiff's car. When nothing was found in the search the Plaintiff was released. I was not involved in any of the incidents described by the Plaintiff in his Complaint.

(Jackson Aff.,¶¶ 7-9, Doc.21-2). To the extent Edwards' complaint can be construed – in deference to his *pro se* status– as an intended reference to the checkpoint stop occurring in

---

[10] *See* Jackson Aff., ¶¶5-6, and Inabinett Aff.,¶¶7-8. Pursuant to a guilty plea for cocaine distribution, Edwards received a split sentence on a 15-year term (one year of incarceration and probation for the remaining years), concurrently with sentences imposed for possession of controlled substances and giving a false statement to an officer. (*See* Defs.' Exs. C , D, Special Report for Defendants Jackson and Inabinett).

2001 or 2002, any claims against Jackson would be barred by the applicable statute of limitations.

Defendant Inabinett testifies similarly: "At no time did I ever search the Plaintiff's car or pull him over at a traffic stop. None of the traffic stops reflected in the logs attached to the Special Report were of the Plaintiff." (Inabinett Aff., ¶ 9, Doc. 21-3). He acknowledges participation in a Drug Task Force which searched Edwards' home pursuant to a search warrant on June 23, 2004; because Edwards included the incident in his handwritten complaint albeit without specifying any misconduct by Defendant Inabinett, the court carefully reviewed his allegations (Doc. 5 at 13-14) and the officer's sworn account of the incident (Inabinett Aff., ¶¶ 10-19) and cannot find any basis for attributing to the Defendant any violation of Edwards' constitutional rights.

In sum, Edwards fails utterly to satisfy his burden first to allege facts for which any relief can be granted against these officers. Construing his *pro se* complaint, the court cannot excuse his failure to demonstrate any genuine issue of dispute fact in opposition to the summary judgment submissions by Defendants Jackson and Inabinett. They are clearly entitled to judgment as a matter of law.

### IV.   CONCLUSION

Accordingly, based on the evidentiary record, it is now the RECOMMENDATION *of the Magistrate Judge* that the *motions for summary judgment* filed on behalf of Defendants Jackson and Inabinett (Doc. 21) and Defendants Wise and Sutherland (Doc. 26), each be

GRANTED, that final judgment be entered in favor of these defendants and against the Plaintiff, and that this action be dismissed with prejudice.

It is further **ORDERED** that the parties shall file any objections to this Recommendation on or before **December 18, 2006**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

The Clerk is hereby reminded to transmit this Recommendation to the Plaintiff at his free-world address.

Done this 4TH day of December, 2006.

/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE